UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Dawn Bradley, | ) | C/A No. 3:15-cv-4734-CMC-KDW |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| United Parcel Service, Inc., | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

This employment-related matter is before the court for issuance of a Report and Recommendation ("Report") pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). Pending is the Motion to Dismiss Plaintiff's Amended Complaint filed by Defendant United Parcel Service, Inc. ("Defendant" or "UPS"), ECF No. 16. Having considered Defendant's Motion and Memorandum (ECF Nos. 16, 16-1); Plaintiff's opposition, ECF No. 17; Defendant's Reply, ECF No. 18; and applicable law, the undersigned recommends Defendant's Motion to Dismiss be *granted in part and denied in part.*

I.      Factual and procedural background

Plaintiff filed this employment action in the Court of Common Pleas for Sumter County, and Defendant removed the matter to this court. ECF No. 1. Defendant moved to dismiss Plaintiff's original Complaint, ECF No. 8, and Plaintiff filed her Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), ECF No. 10. Defendant withdrew the Motion to Dismiss the original Complaint and filed the Motion to Dismiss Plaintiff's Amended Complaint under consideration herein. ECF No. 16.

Plaintiff's Amended Complaint includes causes of action for sexual discrimination and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and a breach-of-contract claim related to Defendant's alleged breach of a written settlement agreement. Defendant moves to dismiss all causes of action for failure to state a claim. It also moves to dismiss the hostile-work-environment claim for failure to exhaust administrative remedies and to dismiss the breach-of-contract claim because it is preempted by § 301 of the Labor Management Relations Act ("LMRA").

Taken from the Amended Complaint and accepted as true for purposes of this Report, Plaintiff alleges the following potentially relevant facts:

Plaintiff, an African-American female, is employed with UPS in its Sumter, South Carolina facility. Plaintiff began working for UPS in 1995 and is currently employed with UPS. Am. Compl. ¶¶ 5, 6. At some undefined point between 1998 and 2002, Plaintiff worked for 30 days as a regular temporary driver at the Sumter UPS facility. *Id.* ¶ 7. From 2002 until February 2014, Plaintiff worked as a "clerk\air bid combination" with UPS. *Id.* ¶ 8. In February 2014 Plaintiff was awarded a full-time driver position at the Sumter UPS facility. *Id.* ¶ 9. Plaintiff did not receive any additional training from UPS at that time. *Id.* ¶¶ 11, 12, 16 (noting UPS did not "suggest or require" computer training for the new position, did not send Plaintiff to driver's training school for the position, and did not "offer or provide" Plaintiff any additional training).

On March 7, 2014, UPS terminated Plaintiff for "failure to follow proper methods, instructions and procedures." Am. Compl. ¶ 18. Plaintiff filed a grievance regarding the termination with her Union. *Id.* ¶ 22. Plaintiff did not receive wages or benefits while the grievance was pending. *Id.* ¶ 23. At her grievance hearing, Defendant admitted Plaintiff had not received adequate full-time-driver ("FTD") training. *Id.* ¶ 24. Defendant reinstated Plaintiff's job after she had agreed to a 25-day suspension without pay. *Id.* ¶ 25. Defendant offered driver

training to Plaintiff at this time, but required that she attend the training on her own time and at her own expense. *Id.* ¶ 26.[1] Plaintiff reported back to work on April 14, 2014, but "did not accept FTD driver shifts due to fear that she would [be] retaliated against for getting her job back." *Id.* ¶ 27.

On May 22, 2014, Plaintiff worked on a new route. Plaintiff avers she should have been advised that she needed an on-car supervisor to ride the route with her because she had not driven it before. Plaintiff was not provided an on-car supervisor, and she alleges her supervisor, Jeffrey Stewart, advised an on-car supervisor not to assist Plaintiff. Plaintiff "struggled" through the route, returning to clock-out of work at 10:13 p.m. so she did not violate regulations. Plaintiff had not delivered all packages when she had to clock-out. While she offered to address the remaining packages, another driver was sent to deliver them. *Id.* ¶¶ 28-39.

Immediately after the May 22, 2014 event, the on-car supervisor called Stewart in Plaintiff's presence, and Stewart terminated Plaintiff for work abandonment. Am. Compl. ¶ 40. On July 11, 2014, Defendant contacted Plaintiff and told her Defendant had "unilaterally changed her termination to a suspension and instructed her to return to work on Monday, July 14, 2014." *Id.* ¶ 44.

On September 8, 2014, Plaintiff and Defendant entered into an agreement in which, inter alia, Defendant agreed to allow Plaintiff to attend the next "feeder school."[2] Am. Compl. ¶ 45. *See* "Dawn Bradley Settlement," ECF No. 10-1 (settlement concerning grievance filed with union). Plaintiff avers Defendant has not permitted her to attend the next feeder school.

Later in September 2014, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). *See* ECF No. 16-2 (copy of EEOC's "Notice

---

[1] It is unclear from the wording of Plaintiff's Amended Complaint whether she actually attended the driver training that was offered to her on her own time and at her own expense.
[2] From context the undersigned infers that "feeder school" is a type of driver training.

of Charge of Discrimination" to Defendant, dated Sept. 26, 2014; "Charge of Discrimination" sent to Defendant by S.C. Human Affairs Commission, dated Sept. 23, 2014). Plaintiff filed suit on November 24, 2015.

## II.     Legal standard

Defendant moves to dismiss each of Plaintiff's causes of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's claims should be dismissed for failure to state a claim and that her hostile-work-environment claim should be dismissed for failure to exhaust administrative remedies. In considering Defendant's failure-to-exhaust-administrative-remedies argument, the court notes the "issue may [be] more properly addressed under Rule 12(b)(1), instead of Rule 12(b)(6)." *Agolli v. Office Depot, Inc.*, 548 F. App'x 871, 875 (4th Cir. 2013). A plaintiff always bears the burden of demonstrating that subject matter jurisdiction properly exists in federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). When a defendant challenges subject-matter jurisdiction pursuant to a Rule 12(b)(1) motion to dismiss, the court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) (citing cases).

Although the usual rule is that a court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein," *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), a court *may* properly consider documents "attached or incorporated into the complaint," as well as documents attached to the defendant's motion, "so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009); *see also Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198

(4th Cir. 2014); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011).

Defendant also seeks Rule 12(b)(6) dismissal of all of Plaintiff's claims. "A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The court measures the legal sufficiency by determining whether the complaint meets the Rule 8 standards for a pleading. *Id.* The Supreme Court considered the issue of well-pleaded allegations, explaining the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)). When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). The court is also to "'draw all reasonable inferences in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). Although a court must accept all *facts* alleged in the complaint as true, this is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citation omitted). While legal conclusions can provide the framework of a complaint, factual allegations

must support the complaint for it to survive a motion to dismiss. *Id.* at 679. Therefore, a pleading that provides only "labels and conclusions" or "naked assertion[s]" lacking "some further factual enhancement" will not satisfy the requisite pleading standard. *Twombly,* 550 U.S. at 555, 557. Further, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). At bottom, the court is mindful that a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Coleman v. Md. Ct. of Apps.,* 626 F.3d 187, 190 (4th Cir. 2010) (internal quotation marks omitted).

## III. Analysis

### A. Title VII claims

#### 1) Failure to exhaust administrative remedies as to hostile-work-environment claim[3]

Defendant seeks dismissal of Plaintiff's Title VII hostile-work-environment claim, Am. Compl. ¶¶ 59-68, for failure to exhaust administrative remedies. Def.'s Mem. 14-15. The undersigned agrees.

Before filing suit under Title VII, "a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *see also* 42 U.S.C. § 2000e–5(f)(1). Exhausting the administrative remedies is a statutory prerequisite to invoking the jurisdiction of this court. *Jones v. Calvert Group, Ltd.*, 551

---

[3] In Defendant's principal brief, it also argues Plaintiff failed to exhaust administrative remedies as to any portion of her Title VII sex discrimination claim (Count I of the Amended Complaint) that related to allegations concerning the lack of light-work assignments to Plaintiff while she was pregnant in 2013. Def.'s Mem. 6-7. In response, Plaintiff clarifies that the 2013 allegations concerning light-duty work and pregnancy are "NOT included in her first cause of action for sex discrimination." Pl.'s Mem. 5 (emphasis in original). Rather, Plaintiff sets out facts regarding her 2013 pregnancy and Defendant's refusal to provide her with light-duty work as had been provided to male employees, *see* Am. Compl. ¶¶ 49-51, "as further evidence of sex discrimination" as to failure to provide driver training and termination, *see* Pl.'s Mem. 4. Accordingly, the undersigned need not consider Defendant's exhaustion argument as to these allegations.

F.3d 297, 300 (4th Cir. 2009) ("[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim.").

The Fourth Circuit Court of Appeals has considered the goals of Congress in enacting the Title VII exhaustion requirement. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). The court has explained that, rather than "a formality to be rushed through so that an individual can quickly file his subsequent lawsuit," Congress intended "the exhaustion requirement to serve the primary purposes of notice and conciliation." *Id.* By notifying an employer of the alleged discrimination through the EEOC charge, the employer may investigate and possibly resolve the alleged discriminatory actions on its own. *Id.* For these and other reasons, "the administrative process is an integral part of the Title VII enforcement scheme." *Id.* Once a plaintiff files an administrative charge, that charge "plays a substantial role in focusing the formal litigation it precedes." *Chacko,* 429 F.3d at 509; *see also Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 132 (4th Cir. 2002) ("The EEOC charge defines the scope of the plaintiff's right to institute a civil suit.").

Here, Plaintiff's Charge is dated September 23, 2014, and is completed on an EEOC Form 5. ECF No. 16-2. The Form 5 Charge of Discrimination requires claimants to "Check appropriate box(es)" indicating the bases of their discrimination claims. The charge form contains "check boxes" for the following: race, color, sex, religion, national origin, retaliation, age, disability, genetic information, and other. The form also requires claimants to include the earliest and latest dates on which the complained-of discrimination took place. The claimant can also check a box for a "Continuing Action."

Plaintiff checked the box indicating her charge of discrimination was based upon race and sex. *Id.*[4] She indicates the discrimination took place on March 7, 2014 at the "earliest" and on May 23, 2014 at the "latest." She did not check the "continuing action" box. *Id.* The "particulars" section of the Charge provides in its entirety as follows:

> I have been employed by [Defendant] since November 1994.
>
> After assuming my new position, I was denied the same training as others outside my class. I was only offered training after I was terminated, reinstated and then placed on a 25 day suspension without pay.
>
> I believe I have been discriminated against in violation of Title VII of the Civil the [sic] Act of 1964, as amended, based on my race, Black.

ECF No. 16-2.

To determine whether a claim in an employment-based lawsuit is encompassed in the charge so as to be maintained in a subsequent Title VII lawsuit, a court may consider "[o]nly [1] those discrimination claims stated in the initial charge, [2] those reasonably related to the original complaint [of discrimination in the charge], and [3] those developed by reasonable investigation of the original complaint [of discrimination in the charge] . . . ." *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 963 (4th Cir. 1996) (citing *King v. Seaboard Coast Line R.R.,* 538 F.2d 581, 583 (4th Cir. 1976)). This inquiry attempts to strike a "balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Sydnor v. Fairfax Cnty., Va.,* 681 F.3d 591, 594 (4th Cir. 2012).

In considering Defendant's exhaustion argument, the elements of a prima facie case of harassment or hostile work environment[5] under Title VII is instructive. To establish such a claim,

---

[4] Plaintiff has not pursued a race-discrimination claim.

[5] As noted in *DeClue v. Central Illinois Light Co.,* 223 F.3d 434, 437 (7th Cir. 2000), "[s]exual harassment is the form of sex discrimination in the terms or conditions of employment that consists of efforts either by co-workers or supervisors to make the workplace intolerable or at

"a plaintiff must show 'that the offending conduct (1) was unwelcome, (2) was because of her [gender], (3) was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment, and (4) was imputable to her employer.'" *Ziskie v. Mineta*, 547 F.3d 220, 224 (4th Cir. 2008) (quoting *Ocheltree v. Scollon Prods., Inc*., 335 F. 3d 325, 331 (4th Cir. 2003)). The "severe or pervasive" element "has both subjective and objective components." *Ocheltree*, 335 F.3d at 333. First, a plaintiff must show that she "subjectively perceive[d] the environment to be abusive." *Harris v. Forklift Sys.*, 510 U.S. 17, 21-22 (1993). Next, a plaintiff must demonstrate that the conduct was such that "a reasonable person in the plaintiff's position" would have found the environment hostile or abusive. *Oncale*, 523 U.S. at 81-82.

As to the first prong of *Evans*, Plaintiff fails. By a plain reading of Plaintiff's Charge, she simply does not set out claims of a hostile work environment toward women. The only portion of Plaintiff's Charge that relates to any gender-based claims is the discrete claim concerning the denial of training as a sex-discrimination.[6] As to the second and third prongs—"reasonably related to" or "developed by reasonable investigation of" the original Charge—Plaintiff falls short, as well.

Nothing in Plaintiff's Charge could be said to be "reasonably related" to a work environment hostile toward females. Consider the Fourth Circuit's ruling in *Chacko*, 429 F.3d at

---

least severely and discriminatorily uncongenial to women ("hostile work environment" harassment) . . . ." Accordingly, cases discussing harassment claims may be relevant to this analysis. Here, Plaintiff's charge does not reference "harassment" or a "hostile work environment."

[6] As an aside, the undersigned notes that the lack-of-training complaint itself does not clearly indicate it is based on Plaintiff's *sex*. Rather, the training complaint indicates Plaintiff was "denied the same training as others outside my class." ECF No. 16-2. The remainder of Plaintiff's Charge focuses on a generalized claim of race-based discrimination—a claim she does not now pursue. In any event, the Charge indicates Plaintiff is claiming both race and sex discrimination, and the discrete training-related sex-discrimination claim has been administratively exhausted.

511-13, in which specific contentions of harassment by one individual (the claimant's supervisor) were found not to be sufficiently related to later-raised claims of harassment by claimant's coworkers. Although the court is to construe EEOC charges liberally, *see Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.,* 848 F.2d 457, 460 (4th Cir. 1988), it is "not at liberty to read into administrative charges allegations they do not contain." *See Balas v. Huntington Ingalls Indus., Inc.,* 711 F.3d 401, 408 (4th Cir. 2013). Similarly, here, Plaintiff's charge does not permit a hostile-work-environment claim.

Even a liberal reading of Plaintiff's EEOC Charge provides no indication that Plaintiff was the victim of an ongoing hostile work environment based on her sex. Plaintiff now attempts to have the court read in a hostile-work-environment claim, arguing the claims she did include in the Charge "specifically relate to how she felt as a result of UPS' failure to provide her training and subsequent terminations." Pl.'s Mem. 11-12 (citing no legal authority for this argument). This argument misses the point. "[T]he exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible. *Miles v. Dell, Inc.,* 429 F.3d 480, 491 (4th Cir. 2005) (internal citations omitted). The Charge includes nothing about Plaintiff's "feelings," nor does it even indicate any "continuing" conduct. It would not be reasonable to suppose Defendant would have read a hostile-work-environment claim into Plaintiff's Charge in this matter based on how Plaintiff "felt." Plaintiff cannot satisfy the second prong of *Evans*. The undersigned recommends a finding that Plaintiff's hostile-work-environment claim is not "reasonably related" to the specific claims in her Charge.

Nor can Plaintiff's Charge satisfy the third *Evans* option—claims developed by reasonable investigation of the complaints in her Charge. Nothing in the Charge includes even any open-ended statements of discrimination based on sex (other than the general check-box notation). Even if it did contain something general about sex-based discrimination, cases from

other district courts within the Fourth Circuit have typically found such general charge allegations insufficient for exhaustion purposes. *See, e.g.*, *Keener v. Universal Cos., Inc.*, No. 1:14CV982, 2015 WL 5130866, at *8-9 (M.D.N.C. Sept. 1, 2015) (collecting cases that find general claim that she had been discriminated against on the basis of her sex would be insufficient for exhaustion as such investigation would not have uncovered the factual allegations giving rise to the plaintiff's claim of sexual harassment). In finding an EEOC charge that stated merely that the claimant "had been discriminated against due to sex" was insufficient to pursue a hostile-work-environment cause of action, the *Keener* court noted:

> As other district courts within this circuit have found, "a reasonable investigation of Plaintiff's statement that she had been discriminated against on the basis of sex would not have 'uncovered the factual allegations' giving rise to Plaintiff's claim of sexual harassment." *See, e.g., Baiden–Adams v. Forsythe Transp., Inc.*, 969 F. Supp. 2d 422, 430 (E.D. Va. 2013) (quoting *Chacko*, 429 F.3d at 512); *see also DeLeon v. Enter. Leasing Co.-Se.*, No. 5:97–CV–972–H 2, 1998 WL 469900, at *3 (E.D.N.C. May 22, 1998) (noting sexual harassment and a sexually hostile work environment are "distinct from other forms of sex discrimination" and dismissing hostile work environment claim for failure to exhaust); *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 746 (D. Md. 1996) (noting "it is unreasonable to assume that the mere mention of 'sex' in the administrative charge will invoke an investigation into all possible basis of discrimination based on sex by the employer"); *Logan v. Colonial Williamsburg Hotel Props.*, 941 F. Supp. 60, 62 (E.D. Va. 1996) (finding "the facts alleging sexual harassment could not be inferred from the allegations in the EEOC charge and would not have been uncovered absent specific allegations in the charge"). Because Plaintiff alleges different kinds of prohibited action in the EEOC Charge and in her Amended Complaint, this case is distinguishable from *Sydnor*, a case where an ADA plaintiff was allowed to claim her employer refused to provide full duty work in a wheelchair during formal litigation, even though her EEOC Charge alleged that the employer refused to allow her to perform light duty. *See Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 595–96 (4th Cir. 2012). Where in *Sydnor*, the Fourth Circuit recognized that the "type of prohibited action alleged . . . remained consistent throughout," *see id.* at 595, here, the allegations are not reasonably related.

*Keener*, 2015 WL 5130866, at *8.

It is recommended that Plaintiff's hostile-work-environment claim be dismissed for lack of jurisdiction based on failure to exhaust administrative remedies.

2) Hostile-work-environment claim: alternative Rule 12(b)(6) analysis

Even if Plaintiff's hostile-work-environment claim were found to have been sufficiently exhausted to confer jurisdiction on the court, that claim should be dismissed for failure to state a claim. Giving her Amended Complaint the most liberal construction possible, Plaintiff has done no more than provide a generalized recitation of the elements of the hostile-work-environment cause of action. Am. Compl. ¶¶ 60-70. Such a formulaic recitation of elements is insufficient. *Twombley*, 550 U.S. at 555.

Further, Plaintiff has not provided factual allegations that are detailed enough to satisfy the *Twombley* requirement of "rais[ing] a right to relief above the speculative level[.]" *Id.* Plaintiff provides no detail of the conduct on which this claim is based, other than to refer back to the "above referenced discriminatory conduct" towards Plaintiff "by and through [Defendant's] agents and employees, specifically, Mr. Stewart[.]" *Id.* ¶ 61. Accordingly, dismissal is appropriate. Both parties analyze this claim under the prima-facie framework. However, at this juncture, Plaintiff is not required to set forth facts establishing a prima facie case of harassment/hostile work environment. *See McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) *cert. denied*, No. 15-573, 2016 WL 763265 (U.S. Feb. 29, 2016) (finding district court improperly analyzed Rule 12(b)(6) challenge to Title VII termination claim using prima facie framework, but finding grant of motion appropriate for failure to meet "plausibility" standard). "[A] complaint [must] contain sufficient factual matter, accepted as true, to state claim to relief that is *plausible* on its face in the sense that the complaint's factual allegations must allow a court to draw the *reasonable inference* that a defendant is liable for the misconduct alleged." *Id.* at 583. *See also Arif v. Staubli Corp.*, No. CA 7:14-4614-TMC, 2015 WL 2401902, at *6 (D.S.C. May 19, 2015) (applying facial plausibility standard to Rule 12(b)(6) challenge in age discrimination claim).

Here, the undersigned is of the opinion that Plaintiff has not stated a hostile-work-environment claim that is plausible on its face. Simply put, Plaintiff has not set out facts establishing any sort of hostile environment at all. Plaintiff's bare-bones assertion that Stewart's supposed conduct "would make a reasonable woman believe that the working environment is hostile," *id.* ¶ 67, is insufficient to demonstrate any plausible claim. Dismissal of this cause of action is appropriate.

### 3) Title VII sexual discrimination claim

Defendant also seeks to dismiss Plaintiff's Title VII sexual discrimination claim, separately analyzing this cause of action as to the lack-of-training allegations and the wrongful-termination allegations.[7] Defs.' Mem. 8-14, Pl.'s Mem. 5-10, Def.'s Reply 2-6. *See* Am. Compl. ¶ 56 (alleging Defendant discriminated against Plaintiff by "failing to provide her driver training that is routinely offered to male employees and terminating her based upon actions for which other male employees were not terminated.").

Title VII prohibits employers from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C.A. § 2000e–2(a). Absent direct evidence,[8] the elements of a prima facie case of Title VII discrimination are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated

---

[7] As noted above, *see* n.3, *supra*, Plaintiff's 2013 allegations are not a part of her sex-discrimination claim. Accordingly, the undersigned need not separately consider Defendant's dismissal argument based on such allegations.

[8] While Plaintiff states that she "sets forth direct evidence of a pattern and practice of sex discrimination, Pl.'s Mem. 5, she does not indicate what that evidence would be. Further, she only analyzes her discrimination claim under the *McDonnell Douglas* prima facie framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Although both parties analyze the wrongful termination claims under the *McDonnell Douglas* framework, at this juncture Plaintiff is not required to set forth facts establishing a prima facie case of discrimination. *See McCleary-Evans*, 780 F.3d at 585. Rather, to state a claim of Title VII discrimination, Plaintiff is required to allege sufficient facts to establish a plausible basis for believing that she was discharged and denied training "*because of* [her] gender." *See id.* (requiring a plaintiff claiming discriminatory failure to hire to allege facts that her employer failed or refused to hire her "*because of*" her race or sex) (quoting 42 U.S.C. § 2000e–2(a)(1)).

a)  Training-related allegations

Defendant argues, albeit in the context of a prima facie analysis, that Plaintiff's failure-to-train allegations cannot proceed because they are not adverse employment actions. The Fourth Circuit recently noted that, in addition to being an element of a prima facie Title VII discrimination claim, the adverse-action requirement is statutory. The court noted:

> [The adverse-employment-action requirement in Title VII discrimination context] "is derived from the statute's requirement that the employer's practice relate to 'compensation, terms, conditions or privileges of employment' or that the practice 'deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee.'" *Ali v. Alamo Rent–A–Car, Inc.,* 8 F. App'x 156, 158 (4th Cir. 2001) (quoting 42 U.S.C. § 2000e–2(a)(1) & (2)).

*Jensen-Graf v. Chesapeake Employers' Ins. Co.*, 616 F. App'x 596, 597-98 (4th Cir. 2015).

As correctly noted by Defendant, to show an adverse employment action (in establishing a prima facie case of Title VII discrimination), "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) (citation and internal quotation marks omitted). "A typical adverse employment action includes discharge,

demotion, decrease in compensation, loss of job title or supervisory responsibility, reduced opportunities for promotion, or other conduct that had a significant detrimental effect." *Gurganus v. Beneficial N.C., Inc.,* 25 F. App'x 110, 112 (4th Cir. 2001) (citing *Boone v. Goldin,* 178 F.3d 253, 255–56 (4th Cir. 1999)). An adverse employment action often has an economic effect; however, that is not a requirement. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998).

Defendant submits Plaintiff's lack of training was not an "adverse action" for these purposes, arguing the lack of training was not detrimental because, *inter alia*, Plaintiff continues to be employed by Defendant and cannot show a significant effect from the lack of training. Def.'s Mem. 9-10. Plaintiff does not dispute that some cases cited by Defendant stand for the proposition that lack of training alone is not an adverse employment action in this context. Pl.'s Mem. 9. Rather, Plaintiff argues she has pleaded a sufficient claim based on the failure to train because, "the failure to provide or allow training did in fact lead to the most adverse employment action there is: termination." *Id.*

In reply, Defendant argues Plaintiff has not pleaded facts suggesting the lack of training was "in any way related to or regarding the same subjects as the methods, instructions and procedures that [Plaintiff] failed to follow on or around March 2014 when her employment was [first] terminated." Def.'s Reply 2-3. Further, Defendant argues the second termination could not have taken place because of any failure to train because Plaintiff has acknowledged Defendant "offered [her] driver training" after reinstating her subsequent to her first termination. *Id.* at 3.

At this pleadings stage, the undersigned agrees with Plaintiff that she has at least shown a plausible discrimination claim based on lack of training. A liberal reading of her Amended Complaint makes it plausible that the lack of adequate training caused at least her March 7, 2014 termination. She indicates she was not sent to driver's training school or computer training when

she became a full-time driver in February 2014. Am. Compl. ¶¶ 9-12. She attributes Defendant's failure to provide her with assistance or training concerning her driver position provided "improper cause to terminate her" for "failure to follow proper methods, instructions and procedures." *Id.* ¶¶ 17-18; *see id.* ¶¶ 13-16. It is plausible that lack of adequate training could result in termination for failure to follow "proper methods, instructions and procedures." Because Plaintiff has pleaded a plausible causal link, she has demonstrated the lack of training resulted in an adverse action—her March 2014 termination.

Determining whether Plaintiff has pleaded a plausible causal link between a lack of training and her May 22, 2014 termination is a closer call. Defendant is correct that the Amended Complaint indicates Defendant "offered [Plaintiff] driver training" after her first (March 7, 2014) termination but before her reinstatement and subsequent May 22, 2014 termination. Plaintiff indicated the training was offered at her own expense and on her own time, however. Am. Compl. ¶ 26. It is unclear whether Plaintiff participated in the offered training using her own funds and time. In any event, Plaintiff's discussion of her "struggle[]" with a full-time driver route on May 22, 2014, *see id.* ¶¶ 31-40, makes it plausible that her termination for job abandonment could have been related to a lack of training.

Accordingly, the undersigned is of the opinion that Plaintiff has presented plausible facts tying her alleged lack-of-training to the adverse events of her terminations. The undersigned further notes Plaintiff has alleged her treatment as to training opportunities has not been equal to treatment of male drivers. *See* Am. Compl. ¶ 47 (alleging Defendant has allowed other male employees, including James Todd, to re-attend driver's training school); ¶ 48 (alleging Defendant provides supervised driver training to male employees but did not provide it to her). At this juncture, Plaintiff has set out plausible facts that she was provided different training opportunities than similarly situated males. Detailed consideration of the prima facie factors

briefed by the parties is unnecessary at this time. *See Jensen Graf*, 616 F. App'x at 597. Plaintiff should be permitted to proceed on pursuing discrimination claims based on her lack of training. She is reminded that the training claims may be actionable only to the extent they resulted in the adverse action of termination.

> b) Wrongful-termination-related allegations

Plaintiff also claims she was discriminated against because Defendant "intentionally failed to provide [her] with assistance so that she would make mistakes as a[n] FTD, providing improper cause to terminate her." Am. Compl. ¶ 17. Plaintiff was terminated on March 7, 2014, for "failure to follow proper methods, instructions and procedures[,]" although male employees David Duke and Michael Barwick were not terminated for similar actions. *Id.* ¶¶ 18, 19. Plaintiff submits she was terminated because she is a female. *Id.* ¶ 21.

Plaintiff also claims her May 22, 2014 termination was discriminatory. Plaintiff submits she was permitted to drive a route on May 22, 2014 without being told she should have an on-car supervisor with her. Am. Compl. ¶ 30. Admitting she "struggled," Plaintiff avers other employees offered to assist her, but that supervisor Stewart would not permit assistance. *Id.* ¶¶ 31-33. Unable to deliver all of the packages on the route, Plaintiff was terminated for work abandonment. *Id.* ¶ 40. Plaintiff again submits male employees such as Duke and Barwick had not been terminated for the same or similar violations. *Id.* ¶¶ 42. Plaintiff also asserts that, at the time of her May 22, 2014 termination for work abandonment, she was "performing her job duties at this time in a satisfactory manner, especially under the circumstances that Defendant provide[d] her." *Id.* ¶ 41.

While more evidence must be provided to survive summary judgment, Plaintiff need not set out a prima facie case of discrimination at this time. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002) (holding "an employment discrimination plaintiff need not plead a prima

facie case of discrimination . . . to survive [an employer's] motion to dismiss"). The undersigned is of the opinion that Plaintiff herein has presented allegations—that are considered true and liberally construed for purposes of Rule 12—sufficient to "raise a right to relief above the speculative level," *Twombly,* 550 U.S. at 555, and withstand Defendant's motion to dismiss pursuant to Rule 12(b)(6). *See, e.g.*, *Ervin v. Ebenezer Senior Servs., LLC*, No. CA 0:15-917-JFA-PJG, 2015 WL 5037108, at *4 (D.S.C. Aug. 24, 2015) (denying motion to dismiss discrimination claim when plaintiff had asserted she was "singled out" on account of her protected characteristic, "had a good employee history/background with the company" before termination, and believed the termination was racially motivated).

Plaintiff should be permitted to pursue her Title VII wrongful termination claim.

B.      Breach of contract/LMRA § 301

In her breach of contract claim, Plaintiff claims Defendant breached portions of the September 8, 2014 settlement agreement. *See* Dawn Bradley Settlement, ECF No. 10-1. In particular, Plaintiff pleads Defendant breached the agreement by "not allowing [Plaintiff] to attend the next feeder school and still preventing her from receiving training to obtain higher paying positions and promotions and in failing to recognize the importance of working in an environment free of discrimination, harassment and retaliation." Am. Compl. ¶ 73.

Defendant argues this cause of action is preempted by § 301 of the LMRA and does not state an actionable claim. Def.s' Mem. 18-24. In this context, the Fourth Circuit has explained:

> Section 301 of the Labor Management Relations Act establishes federal subject matter jurisdiction over employment disputes covered by a collective bargaining agreement and directs federal courts to fashion a uniform body of federal common law applicable to such disputes. *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209 (1985). The "preemptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 23 (1983) (internal quotation marks omitted).

> A state law claim is preempted when resolution of the claim "**requires the interpretation of a collective-bargaining agreement,**" *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 405–06 (1988), or is "**inextricably intertwined with consideration of the terms of the labor contract.**" *Lueck,* 471 U.S. at 213; *see also IBEW, AFL–CIO v. Hechler,* 481 U.S. 851, 863 n.5 (1987) (noting that a state law claim is preempted when "[t]he nature and scope of the duty of care owed Plaintiff is determined by reference to the collective bargaining agreement"). "[T]he bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require [preemption]." *Livadas v. Bradshaw,* 512 U.S. 107, 124 (1994).

*Foy v. Giant Food Inc.,* 298 F.3d 284, 287 (4th Cir. 2002) (emphases added).

Here, Defendant argues the contract breaches Plaintiff has asserted would necessarily require the court to analyze and apply multiple provisions of the Collective Bargaining Agreement ("CBA"). *See* ECF No. 16-4 (copy of CBA). As Defendant points out, the settlement agreement specifically references the CBA, indicating as follows:

> 4. Dawn Bradley being the only full time employee who signed the feeder bid list will be allowed to attend the next feeder school as provided by the **collective bargaining agreement.**

> 5. In regards to the article 36/37 grievance(s) filed by Dawn Bradley, the Company [Defendant], the Union and Dawn Bradley recognize the importance of working in a work environment free of discrimination, harassment and retaliation and all agree that the **collective bargaining agreement** language addressing such issues should be observed and followed at all times.

ECF No. 10-1 (emphases added).

Plaintiff counters, arguing the contract at issue "was entered into between Bradley and UPS," and the terms of the CBA have "no relevance whatsoever." Pl.'s Mem. 14. She submits that her Amended Complaint was able to "articulate[] the facts demonstrating the breach" without referencing the CBA. *Id.* Plaintiff offers no authority for her argument.

The undersigned agrees with Defendant. It is hard to imagine how interpretation of the CBA would *not* be involved or how portions of the CBA would not be intertwined with the breach-of-contract claim. Plaintiff was to be permitted to attend a particular training school "as provided by the collective bargaining agreement." Even more CBA-dependent is the agreement

that the "collective bargaining agreement language addressing [issues of discrimination-free workplace] should be observed and followed at all times." ECF No. 10-1. It would be impossible to analyze a claim for the breach of a promise to follow specific language at all times without knowing what that specific language was. The CBA's involvement in considering the settlement contract at issue is patent.

As the Fourth Circuit noted, when, as here, resolution of a state-law claim depends substantially on the analysis of a CBA's terms, it must either be (a) treated as a claim under § 301, subject to dismissal if the collective bargaining agreement's grievance and arbitration procedures have not been followed;[9] or (b) alternatively be dismissed as preempted by § 301. *Barton v. House of Raeford Farms, Inc.*, 745 F.3d 95, 107 (4th Cir.) *cert. denied,* 135 S. Ct. 160 (2014) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)).

Here, though, Plaintiff argues only that resolution of her state-law claim does not depend on analyzing the CBA. Defendant argues Plaintiff has not pleaded facts indicating her breach-of-contract claim was timely, and, even if considered to be timely, Plaintiff's breach-of-contract claim should be dismissed for failure to state a claim. Def.'s Mem. 21-24.

However, Plaintiff does not respond to Defendant's additional arguments, indicating those arguments are "superfluous[]" because "she is not making a § 301 claim in this particular lawsuit" and her claim is "not preempted by § 301." Pl.'s Mem. 15 n.1. As Plaintiff effectively has conceded her contract claim cannot be pursued if the court finds it involves analyzing the CBA, further consideration of Defendant's alternative arguments is not required. It is

---

[9] In so-called "hybrid § 301 actions" an employee may forgo the exhaustion requirement by showing both the union breached its duty of fair representation and the employer breached the CBA. *See Groves v. Commc'n Workers of Am.*, No. 14-1854, 2016 WL 908882, at *1 (4th Cir. Mar. 10, 2016). Without discussing whether Plaintiff exhausted remedies, Defendant considers Plaintiff's case a hybrid § 301 claim. Def.'s Mem. 21-24.

recommended that Defendant's Motion to Dismiss Plaintiff's breach-of-contract claim be granted.

IV.    Conclusion and recommendation

For the reasons set forth above, it is recommended that Defendant's Motion to Dismiss, ECF No. 16, be granted in part (as to the hostile-work-environment and breach-of-contract claims) and denied in part (as to the Title VII sexual discrimination claim).

IT IS SO RECOMMENDED.


March 11, 2016                                              Kaymani D. West
Florence, South Carolina                                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**